**Docket Nos. 23-15650 (L), 24-1979**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

ANDREW HARRINGTON, et al.,

*Plaintiffs-Respondents-Appellees,*

v.

CRACKER BARREL OLD COUNTRY STORE,

*Defendant-Petitioner-Appellant.*

---

*Appeal from a Decision of the United States District Court for the District of Arizona,*
*No. 2:21-cv-00940-DJH · Honorable Diane J. Humetewa*

## RESPONDENTS'/APPELLEES'
## ANSWERING BRIEF

NITIN SUD, ESQ.
SUD LAW P.C.
6750 West Loop South, Suite 920
Bellaire, Texas 77401
(832) 623-6420 Telephone
nsud@sudemploymentlaw.com

BENJAMIN PIERCE, ESQ.*
JOHN H. SUD, ESQ.
ATTORNEYS AT LAW
141 East Palm Lane
Phoenix, Arizona 85004
(602) 284-3130 Telephone*
(309) 310-6909 Telephone

*Attorneys for Plaintiffs-Respondents-Appellees Andrew Harrington, et al.*

 COUNSEL PRESS · (213) 680-2300          PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF JURISDICTION...................................................................1

ISSUES PRESENTED.........................................................................................2

STANDARD OF REVIEW ................................................................................3

STATEMENT OF THE CASE ...........................................................................4

    I.      Introduction ...........................................................................................4

    II.     Factual and Procedural Background .............................................6

          A.     Appellant waives service of summons......................................6

          B.     First Motion to Dismiss and Motion for Conditional Certification ......................................................................................7

          C.     Amended Complaint and Amended Motion for Conditional Certification ...............................................................9

          D.     Second Amended Complaint and Second Amended Motion for Conditional Certification ......................................11

          E.     The District Court denies Appellant's Motion to Dismiss and grants conditional certification...........................................13

          F.     Appellant panics........................................................................14

SUMMARY OF THE ARGUMENT ...................................................................15

ARGUMENT ........................................................................................................17

    I.      This Court should not exercise jurisdiction under 28 U.S.C. § 1292(b) ..............................................................................................17

    II.     There is no reason to overturn *Campbell* or infringe on a district court's discretion as to how it manages its cases ...............................21

    III.   BMS does not apply and nationwide notice is appropriate.................24

i

| | | |
|---|---|---|
| A. | The BMS decision | 25 |
| B. | The purpose and history of the FLSA | 26 |
| C. | Portal-to-Portal Act | 27 |
| D. | The text of Section 216(b) shows collective actions are representative actions | 29 |
| E. | Courts have interpreted section 216(b) claims to be representative actions | 31 |
| F. | The First Circuit *Waters* decision | 33 |
| G. | Rule 4(k) does not apply | 33 |
| H. | The circuits applying BMS to Section 216(b) claims are wrong | 34 |
| I. | Application to this case | 37 |
| J. | The District Court's prior rulings moot Appellant's argument | 37 |
| K. | Alternatively, the correct procedure is for Appellant to request a venue transfer | 38 |
| IV. | Resolving any arbitrability disputes are appropriate for the second stage of the conditional certification process | 39 |
| A. | Background | 39 |
| B. | Disputes exist as to who is subject to arbitration | 40 |
| C. | The District Court made a decision based on the evidence presented | 41 |
| D. | Resolving arbitrability disputes is appropriate for the second stage of the conditional certification process | 42 |
| V. | The District Court did not commit clear error when making a factual determination that Basch voided the arbitration agreement | 44 |

A.  Standard of review .......................................................44

B.  Arizona state law applies ..........................................44

C.  Factual and procedural background ..........................................45

D.  There is no clear error ....................................................47

E.  Continued employment was not consideration in exchange for agreeing to arbitration ..........................................50

F.  Appellant's argument is contrary to Arizona law and would eradicate the infancy doctrine ..........................................51

G.  The cases relied on by Appellant do not apply ..........................52

H.  Under the "law of the case" doctrine, the District Court's decision must be affirmed ..........................................56

CONCLUSION ..........................................................................57

CERTIFICATE OF COMPLIANCE ..........................................58

STATEMENT OF RELATED CASES ..........................................59

CERTIFICATE OF SERVICE ..........................................60

# TABLE OF AUTHORITIES

## CASES

*Abraham v. St. Croix Renaissance Grp., L.L.L.P.*,
  719 F.3d 270 (3rd Cir. 2013) ........................................................36

*Almada v. Ruelas*,
  96 Ariz. 155 (1964) .....................................................................44

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003 (9th Cir. 2023) ..................................................3, 44

*Bigger v. Facebook, Inc.*,
  947 F.3d 1043 (7th Cir. 2020) ......................................................43

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ........................................................18

*Bobby Floars Toyota Inc. v. Smith*,
  48 N.C. App. 580 (N.C. 1980) .....................................................53

*Boon Glob. Ltd. v. United States Dist. Court (In re Boon Glob., Ltd.)*,
  923 F.3d 643 (9th Cir. 2019) ..................................................10, 19

*Bragdon v. Abbott*,
  524 U.S. 624 (1998) .....................................................................27

*Breuer v. Jim's Concrete of Brevard, Inc.*,
  538 U.S. 691 (2003) .....................................................................29

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*,
  582 U.S. 255 (2017) ............................................................1, 24, 36

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*,
  1 Cal. 5th 783 (Cal. 2016) ............................................................25

*Brixey v. McAdoo's Seafood Co., LLC*,
  C.A. No. SA-23-cv-00232-DAE; 2024 U.S. Dist. LEXIS 1467
  (W.D. Tex. Jan. 2, 2024) ..............................................................23

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..................................................................8, 19

iv

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ........................................................9, 21, 22, 32

*Canaday v. Anthem Cos.*,
439 F. Supp. 3d 1042 (W.D. Tenn. 2020) ...................................................20

*Canaday v. Anthem Cos.*,
9 F.4th 392 (6th Cir. 2021) ...................................................20, 28, 31, 35, 36

*Clark v. Wells,*
203 U.S. 164 (1903)...................................................................................30

*Cronin v. Bank of Am. Corp.*, C.A.
No. 3:23-cv-00813-KDB-DCK, 2024 U.S. Dist. LEXIS 138599
(W.D.N.C. Aug. 5, 2024) ....................................................................20, 21

*Davidson v. O'Reilly Auto Enters., LLC*,
968 F.3d 955 (9th Cir. 2020) ...........................................................................3

*Droesch v. Wells Fargo Bank, N.A.*,
No. 20-cv-06751-JSC, 2021 WL 2805604 (N.D. Cal. July 6, 2021)...........43

*Dunne v. Quantum Residential Inc.*,
2024 U.S. Dist. LEXIS 108285 (W.D. Wash. June 18, 2024) ......................22

*E.K.D. ex. Rel Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012) .............................................................54

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018)........................................................................................24

*Fed. Trade Comm'n v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ...........................................................................3

*Fischer v. Fed. Express Corp.*,
42 F.4th 366 (3d Cir. 2022) ..........................................................................35

*Ford Motor Co. v. Mont. Eighth Judicial Distr. Ct.*,
592 U.S. 351 (2021)......................................................................................26

*Garcia v. Cent. Coast Rests., Inc.*,
No. 18-cv-02370-RS, 2019 U.S. Dist. LEXIS 162588
(N.D. Cal. Sept. 23, 2019) .......................................................................47, 48

*Genesis HealthCare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ....................................................................... 18

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962) ..................................................................... 39

*Gonzalez v. Diamond Resorts Int'l Mktg.*,
    Case No. 18-cv-979-APG-CWH, 2019 U.S. Dist. LEXIS 126434
    (D. Nev. July 29, 2019) ................................................................ 42

*Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*,
    182 Ariz. 586 (1995) .................................................................... 48

*Halle v. West Penn Allegheny Health Sys.*,
    842 F.3d 215 (3d Cir. 2016) ......................................................... 22

*Harris v. Diamond Dolls of Nev., LLC*,
    2023 U.S. Dist. LEXIS 219674 (D. Nev. Dec. 11, 2023) ............ 22

*Hoffmann-La Roche v. Sperling*,
    493 U.S. 165 (1989) ..................................................... 28, 29, 32, 44

*Holifield v. NexusCw, Inc.*,
    2024 U.S. Dist. LEXIS 149038 (S.D. Cal. Aug. 20, 2024) ......... 22

*Hurley v. Southern Cal. Edison Co.*,
    183 F.2d 125 (9th Cir. 1950) .................................................. 48, 49

*I.B. ex rel. Fife v Facebook*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) ........................................ 53

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ...................................................... 17

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ..................................................................... 19

*Jennings v. Lee*,
    105 Ariz. 167 (1969) .................................................................... 51

*Johnson v. Lazer Spot, Inc.*,
    C.A. No. 1:22-cv-1852-MHC, 2024 U.S. Dist. LEXIS 11865
    (N.D. Ga. Jan. 19, 2024) .............................................................. 23

*Jones v. Medtronic Inc.*,
  411 F. Supp. 3d 521 (D. Ariz. 2019) ........................................................9, 19

*Kelly v. Furlong*,
  194 Minn. 465 (Minn. 1935) ...........................................................................55

*Knepper v. Rite Aid Corp.*,
  675 F.3d 249 (3d Cir. 2012) ............................................................................28

*Leslie Salt Co. v. United States*,
  55 F.3d 1388 (9th Cir. 1995) .....................................................................56, 57

*Lightfoot v. Cendant Mortg. Corp.*,
  580 U.S. 82 (2017)............................................................................................30

*Lillehagen v. Alorica, Inc.*,
  2014 U.S. Dist. LEXIS 67963 (C.D. Cal. May 15, 2014)...............................18

*Lopez v. Aircraft Serv. Int'l*,
  No. 23-55015, 2024 U.S. App. LEXIS 17784
  (9th Cir. July 19, 2024)................................................................................3, 44

*Lopez v. Kmart Corp.*,
  No. 15-cv-01089-JSC, 2015 U.S. Dist. LEXIS 58328
  (N.D. Cal. May 4, 2015) ..................................................................................54

*Lorelei Corp. v. County of Guadalupe*,
  940 F.2d 717 (1st Cir. 1991)............................................................................33

*Loy v. Rehab Synergies, L.L.C.*,
  71 F.4th 329 (5th Cir. 2023) ...........................................................................23

*Marsh v. J. Alexander's, LLC*,
  905 F.3d 610 (9th Cir. 2018) .............................................................................5

*Meija v. Bimbo Bakeries USA, Inc.*,
  No. CV-16-00654-TUC-JAS, 2017 U.S. Dist. LEXIS 222183
  (D. Ariz. Aug. 14, 2017)..................................................................................42

*Merchants' Credit Bureau v. Akiyama*,
  64 Utah 364, 370 (1924).............................................................................48, 49

*Midkiff v. Anthem Co., Inc.*,
    640 F. Supp. 3d 486 (E.D. Va. 2022) ............................................................23

*Milton H. Greene Archives v. Marilyn Monroe LLC*,
    692 F. 3d 983 (9th Cir. 2012) ......................................................................38

*Monplaisir v. Integrated Tech Grp., LLC*,
    No. C 19-1484 WHA, 2019 U.S. Dist. LEXIS 132887
    (N.D. Cal. Aug. 6, 2019) ...............................................................................42

*Neumann v. Red Rock 4-Wheelers, Inc.*,
    C.A. No. 2:19-cv-02160-ART-EJY, 2022 U.S. Dist. LEXIS 146131
    (D. Nev. Aug. 15, 2022) ................................................................................38

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ......................................................................................38

*Norred v. Cotton Patch Café, LLC*,
    3:19-cv-1010-G, 2019 U.S. Dist. LEXIS 183290 (N.D. Tex. 2019) ............55

*Ortiz v. True Food Kitchen Holdings, LLC*,
    No. CV-22-01821-PHX-DGC, 2023 U.S. Dist. LEXIS 51812
    (D. Ariz. Mar. 27, 2023) ..........................................................................31, 34

*Paster v. Putney Student Travel, Inc.*,
    CV 99-2062 RSWL, 1999 U.S. Dist. LEXIS 9194
    (C.D. Cal. June 7, 1999) ...............................................................................52

*Prickett v. Dekalb County*,
    349 F.3d 1294 (11th Cir. 2003) ...............................................................26, 32

*Repwest Ins. Co. v. Praetorian Ins. Co.*,
    890 F. Supp. 2d 1168 (D. Ariz. 2012) ..........................................................22

*Richter v. Autozoners, LLC*,
    2023 U.S. Dist. LEXIS 200161 (D. Mont. Nov. 7, 2023) ..............................22

*Rivera v. CHSPSC, LLC*,
    C.A. No. 2:23-cv-00336-KWR-KK, 2024 U.S. Dist. LEXIS 130118
    (D. N.M. July 23, 2024) .................................................................................23

*Sandbergen v. Ace Am. Ins. Co.*,
No. 18-cv-04567-SK, 2019 WL 13203944
(N.D. Cal. June 17, 2019) .................................................................43

*Scott v. Chipotle Mexican Grill, Inc.*,
954 F.3d 502 (2d Cir. 2020) ...........................................................22

*Sheller by Sheller v. Frank's Nursery & Crafts*,
957 F. Supp. 150 (N.D. Ill. 1997) ....................................................53

*Smith v. T-Mobile USA, Inc.*,
570 F.3d 1119 (9th Cir. 2009) .........................................................31

*Southard v. Kipper Tool Co.*,
C.A. No. 3:15-cv-03621-JSC, 2023 U.S. Dist. LEXIS 188279
(N.D. Cal. Oct. 19, 2023) ................................................................39

*St. Paul Fire & Marine Ins. Co. v. Muniz*,
504 P.2d 546 (Ariz. App. 1972) ......................................................44

*Stroupes v. Finish Line, Inc.*,
No. 1:04-cv-133, 2005 U.S. Dist. LEXIS 6975
(E.D. Tenn. Mar. 15, 2005) .............................................................54

*Swales v. KLLM Transp. Services, L.L.C.*,
985 F.3d 430 (5th Cir. 2021) ...........................................................12

*Terry v. Hodges*,
2024 U.S. Dist. LEXIS 4330 (D. Or. Jan. 9, 2024) .......................22

*Thiessen v. General Electric Capital Corp.*,
267 F.3d 1095 (10th Cir. 2001) ......................................................22

*Thornton v. Tyson Foods, Inc.*,
683 F. Supp. 3d 885 (W.D. Ark. 2023) .....................................22, 23

*Tijerino v. Stetson Desert Project*, LLC,
934 F.3d 968 (9th Cir. 2019) ...........................................................22

*Underhill v. Kijakazi*,
No. 22-36033, 2023 U.S. App. LEXIS 32346
(9th Cir. Dec. 27, 2023) ...................................................................56

*United States v. Berkowitz,*
    328 F.2d 358 (3d Cir. 1964) ...........................................................................39

*United States v. Hinkson,*
    585 F.3d 1247 (9th Cir. 2009) ..........................................................................3

*United States v. Lummi Nation,*
    763 F.3d 1180 (9th Cir. 2014) ........................................................................56

*Valencia v. White,*
    134 Ariz. 139 (Ariz. Ct. App. 1982)...............................................................51

*Vallone v. CJS Sols. Grp., LLC,*
    9 F.4th 861 (8th Cir. 2021) .............................................................................35

*Vanegas v. Signet Builders, Inc.,*
    No. 23-2964, 2024 U.S. App. LEXIS 20780
    (7th Cir. Aug. 16, 2024) ...................................................................28, 34, 35

*Varna v. TCC Wireless, LLC,*
    478 F. Supp. 3d 724 (N.D. Ill. 2020)..............................................................40

*Waters v. Day & Zimmerman NPS, Inc.,*
    23 F.4th 84 (1st Cir. 2022) ...........................................................20, 22, 33, 34

*Waters v. Day & Zimmerman NPS, Inc.,*
    464 F. Supp. 3d 455 (D. Mass. 2020) .............................................................20

*Wilkinson v. Facebook, Inc.,*
    2024 U.S. App. LEXIS 12163 (9th Cir. May 21, 2024) ...............................17

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)........................................................................................26

*Worman Motor Co. v. Hill,*
    54 Ariz. 227 (1939)........................................................................................51

*Wright v. Waste Pro USA, Inc.,*
    69 F.4th 1332 (11th Cir. 2023) .......................................................................22

*Yeseta v. Baima,*
    837 F.2d 380 (9th Cir. 1988) .........................................................................44

## COURT RULES

Federal Rules of Civil Procedure 12(b)(3) ................................................39

## STATUTES

28 U.S.C. § 1292(b) ...............................................1, 14, 15, 17, 20

28 U.S.C. § 1331 ...............................................................1

28 U.S.C. § 1404 ...........................................................16, 32

28 U.S.C. § 1404(a) ........................................................38, 39

28 U.S.C. § 1406 ..............................................................16

28 U.S.C. § 1406(a) ...........................................................38

29 U.S.C. § 201 et seq.........................................................1

29 U.S.C. § 202(a) .............................................................26

29 U.S.C. § 202(b) .............................................................26

29 U.S.C. § 203(m) .............................................................4

29 U.S.C. § 203(m)(2)(A)(ii) ...............................................5, 6

29 U.S.C. § 206 ................................................................6

29 U.S.C. § 216 ................................................................6

29 U.S.C. § 216(b) ........................................................*passim*

## OTHER AUTHORITIES

7B Wright & Miller, FED. PRAC. & PROC. CIV. § 1807 (3d ed.).............................32

29 C.F.R. § 531.56(f) ..........................................................5

93 Cong. Rec. 538, 2182 (1947) .............................................27

Fair Labor Standards Act of 1938 (1938), at § 16(b) .............................28

Fair Labor Standards Act of 1938 (2024), at § 216(b) .............................................28

https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362 .........46

Low Wages and Few Benefits Mean Many Restaurant Workers Can't
    Make Ends Meet, Econ. Pol. Inst., Aug. 21, 2014,
    https://www.epi.org/publication/restaurant-workers .......................................4

Restaurant Employee Demographics, Nat. Restaurant Assoc.,
    April 2024, https://restaurant.org/getmedia/6f8b55ed-5b3f-40f5-
    ad04-709ff7ff9f0f/nra-data-brief-restaurant-employee-
    demographics.pdf ...........................................................................................4

Restaurants/Food Service, Nat. Human Trafficking Hotline,
    https://humantraffickinghotline.org/en/labor-trafficking-
    venuesindustries/restaurantsfood-service (last visited Aug. 27, 2024) ..........4

The Hands that Feed Us, The Food Chain Workers Alliance,
    June 6, 2012, https://foodchainworkers.org/wp-
    content/uploads/2012/06/Hands-That-Feed-Us-Report.pdf ...........................4

## STATEMENT OF JURISDICTION

The District Court had federal question jurisdiction under 28 U.S.C. § 1331 because this case was brought under a federal law, the Fair Labor Standards Act. *See* 29 U.S.C. § 201 *et seq*.

Appellees disagree that Issue No. 1 in Appellant's brief (pp. 15, 29-46), which concerns the *Campbell* certification process for FLSA collective actions, should be considered by this Court. The District Court specifically determined that this issue did not meet the criteria under 28 U.S.C. § 1292(b). SER-22-23. Therefore, this Court should not exercise jurisdiction on this issue.

Furthermore, as the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255 (2017) ("BMS") is to be considered in this appeal, that case relied on "settled principles regarding specific jurisdiction." *Id.* at 264. *BMS* only addressed the limits of the Fourteenth Amendment on the jurisdiction of state courts, so it has no impact on this case, which concerns a federal claim brought in federal court.

## **ISSUES PRESENTED**

This appeal is mainly about whether the trial court abused its discretion in how it manages its case and whether it committed clear error with respect to any factual findings.

Appellant has articulated four issues for this appeal. *App. Brief, p. 15*. Appellees disagree with the way Appellant has articulated Issue Nos. 1 and 4, as follows.

1. The first issue concerns the certification process for FLSA collective actions. If it is to be considered by this Court, then it should be rephrased as:

> "Should this Court disregard a district court's discretion in how it manages its cases regarding the FLSA collective action process, overturn its own decision in *Campbell*, and adopt the Fifth Circuit's *Swales* standard?"

4. The fourth issue is whether the arbitration agreement can be enforced for Dylan Basch even though the District Court made a factual finding that he voided it. The proper question should be:

> "Did the District Court commit clear error when making a factual determination that Basch appropriately voided the arbitration agreement?"

2

## <u>STANDARD OF REVIEW</u>

The standard of review as articulated by Appellant needs to be corrected.

Appellees agree that conclusions of law and mixed questions of law and fact are reviewed under a de novo standard; however, any findings of fact made by a district court are reviewed under a "clear error" standard. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020).

A district court's case management decisions are reviewed under an "abuse of discretion" standard. *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 963 (9th Cir. 2020). Such deferential decisions must be affirmed unless the decision was "'illogical, implausible, or without support in inferences that may be drawn from facts in the record.'" *Id.* (citing *United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc)).

Finally, although a decision to deny a motion to compel arbitration is reviewed de novo, "findings of fact underlying the district court's decision" are reviewed for "clear error." *Lopez v. Aircraft Serv. Int'l*, No. 23-55015, 2024 U.S. App. LEXIS 17784, *5 (9th Cir. July 19, 2024) (citing *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023)). Therefore, factual findings concerning Basch's voiding of the arbitration agreement must be reviewed under the "clear error" standard.

## STATEMENT OF THE CASE

### I.    Introduction

As among the lowest-paid jobs, "restaurant servers have three times the poverty rate and use food stamps at double the rate of the rest of the U.S. workforce."[1]. The statistics are worse for minorities working in the restaurant industry.[2] About 40% of restaurant workers are under the age of 25, compared to 13% of the total labor force.[3] Such positions are also ripe for the use of force, fraud, and coercion to intimidate workers.[4]

The Fair Labor Standards Act requires employers to pay their employees at least minimum wage for all hours they work. Section 3(m) of the FLSA allows certain employers to take a credit on the wages they must pay for certain occupations where employees receive tips from customers. *See* 29 U.S.C. § 203(m). In the restaurant industry, this is a common payment scheme for food server employees. If administered

---

[1] *See The Hands that Feed Us,* THE FOOD CHAIN WORKERS ALLIANCE, June 6, 2012, *https://foodchainworkers.org/wp-content/uploads/2012/06/Hands-That-Feed-Us-Report.pdf.*

[2] *See Low Wages and Few Benefits Mean Many Restaurant Workers Can't Make Ends Meet*, ECON. POL. INST., Aug. 21, 2014, *https://www.epi.org/publication/restaurant-workers.*

[3] *See Restaurant Employee Demographics*, NAT. RESTAURANT ASSOC., April 2024, *https://restaurant.org/getmedia/6f8b55ed-5b3f-40f5-ad04-709ff7ff9f0f/nra-data-brief-restaurant-employee-demographics.pdf.*

[4] *See Restaurants/Food Service*, NAT. HUMAN TRAFFICKING HOTLINE, *https://humantraffickinghotline.org/en/labor-trafficking-venuesindustries/restaurantsfood-service* (last visited Aug. 27, 2024)

properly, the employee receives tips for servicing and interacting with paying customers, and the employer benefits via customer satisfaction, repeat business, and saving on wage/labor expenses because it can pay the employee as little as $2.13/hour, saving $5.12/hour in wages (and sometimes more if a state with a higher minimum wage allows a larger tip-credit). For a large nationwide employer like Appellant Cracker Barrel, which has over 70,000 employees at any given time, the money it saves by trying to use the tip-credit payment scheme is astronomical. In its opening brief, Appellant notes that the scope of potential opt-in plaintiffs may cover up to 150,000 servers that it employed during the relevant time period. Taking a conservative estimate of 50,000 servers working each year at just 30 hours per week, being paid $5.12/hour less than the applicable minimum wage, Cracker Barrel saves $7,680,000 per week in wage costs, or $400 million per year.

But to use the tip-credit payment scheme, there are rules by which restaurant employers must abide. Servers cannot spend time working in other occupations at a tip-credit rate or, alternatively, more than 20% of their work time or more than 30 continuous minutes performing non-tipped work.[5] Also, employers are required to provide notice to their servers about the tip-credit rules before applying the scheme. 29

---

[5] 29 C.F.R. § 531.56(f); *Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018).

U.S.C. § 203(m)(2)(A)(ii). Finally, as with all hourly workers, employers cannot require their employees to work off-the-clock.

Combining Cracker Barrel's financial incentive with the servers' vulnerabilities and youth provides the optimal opportunity for Appellant to disregard the tip-credit requirements. This case concerns Appellant violating the three rules referenced above on a nationwide basis.

## II.  **Factual and Procedural Background**

### A.  **Appellant waives service of summons**

On May 28, 2021, this case was initiated under the FLSA as a proposed collective action. *ECF 1*;[6] 29 U.S.C. §§ 206, 216. The four named plaintiffs at that time had worked for Appellant in Arizona, South Carolina, North Carolina, and Pennsylvania, respectively. That same day, 112 additional plaintiffs from around the country filed opt-in forms. *ECF 3*. A waiver of service of summons was delivered to Appellant's attorney, which was signed and filed with the court on June 17, 2021. SER-117. Accordingly, Appellant waived any alleged defects in service.

---

[6]  All assertions regarding matters in the record are supported by citation to the ER or SER. Pursuant to Rule 28-2.8, assertions regarding undisputed facts offered only for general background are not included in the ER or SER. For the Court's convenience, these assertions are cited using the district court ECF number.

### B.      First Motion to Dismiss and Motion for Conditional Certification

Appellees filed a motion for conditional certification on June 22, 2021, providing evidence from plaintiffs in several states articulating Appellant's violations of the FLSA. *ECF 8*. By then, there were about 200 opt-in plaintiffs from 30 states who had joined the lawsuit. *Id., p. 8.* Dozens of additional plaintiffs from around the country continued to opt into the lawsuit and provide declarations describing Appellant's illegal pay practices. *ECF 10-11, 15-20, 22, 25*.

On August 6, 2021, after appearing generally, Appellant filed a Motion to Dismiss and Compel Arbitration. *ECF 21*. It did <u>not</u> file a motion under Rule 12(b)(2) or otherwise challenge jurisdiction. Instead, Appellant provided substantive evidence relating to the four named plaintiffs (three of whom resided outside of Arizona), arguing they should be compelled to arbitration. Appellant did not seek to compel any of the opt-in plaintiffs into arbitration. It also sought to apply Arizona substantive state law to enforce the arbitration agreements for the three out-of-state named plaintiffs. *ECF 21, pp. 9-10*.

Appellees responded on August 27, 2021. *ECF 29*. Of relevance to this appeal, it was noted there were two opt-in plaintiffs – Andrew Harrington and Shaena Webster – who were minors when they may have signed an arbitration agreement but had since voided it. *Id., p. 17,* SER-97-98. These two opt-in plaintiffs were in Ohio and Kentucky,

7

respectively. *Id*. Although Appellant opposed the motion for conditional certification (*ECF 32*), it still did not challenge personal jurisdiction for any out-of-state plaintiffs.

The District Court issued a ruling on November 12, 2021, primarily finding that the arbitration agreement at issue at that time was substantively enforceable under Arizona law and that the four named plaintiffs – including the three out-of-state plaintiffs[7] – were subject to arbitration.[8] ER-45-54. It also found that "at least a few of the opt-in Plaintiffs are not subject to" arbitration, noting that Harrington and Webster – both out-of-state – had properly voided the agreement they had signed as minors.[9] ER-47. Therefore, the trial court dismissed the Original Complaint, ordered the four original named plaintiffs to arbitration, and permitted Appellees to file an amended complaint. ER-54.

---

[7] The District Court also applied Arizona law when evaluating the agreements entered into by the three out-of-state named plaintiffs. So it is undisputed that Appellant purposely availed itself to the privileges of conducting activities in Arizona, as it invoked the "benefits and protections" of the state's laws for out-of-state employees. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

[8] There are two arbitration agreements. The original one that was created in 2015, and another created in November 2019. SER-34-38, 82-86. The District Court only evaluated the 2015 contract for enforceability, under Arizona law and as it relates to the four original named plaintiffs.

[9] Harrington was 21 years old when he voided his agreement, and Webster was 22 years old. *ECF 29-2*; ER-47. They both voided the agreements three and four years, respectively, after reaching the age of majority.

**C.** **Amended Complaint and Amended Motion for Conditional Certification**

Appellees then filed a First Amended Complaint with new named plaintiffs Andrew Harrington, Katie Liammaytry, and Jason Lenchert, who were in Ohio, North Carolina, and Florida, respectively. *ECF 57*. They had already joined the lawsuit as opt-in plaintiffs[10] before Appellant filed its initial motion to dismiss. They simply became the new named plaintiffs. As referenced above, Harrington had voided the ADR agreement. Liammaytry and Lenchert never signed the ADR agreement. Appellees also filed an amended motion for conditional certification. *ECF 58*.

On March 9, 2022, Appellant filed a motion to dismiss, arguing that personal jurisdiction did not exist because none of the new named plaintiffs worked in Arizona. *ECF 62*. Appellees argued that personal jurisdiction did exist because Appellant waived this defense, as the three new named plaintiffs were already part of the lawsuit when Appellant filed its motion to dismiss, and it had not raised such a defense at that time. *ECF 71, pp. 4-10*; *see Campbell v. City of Los Angeles*, 903 F.3d 1090, 1099 (9th Cir. 2018) ("Opt-in plaintiffs are parties to the collective action[.]"); *Jones v. Medtronic Inc.*, 411 F. Supp. 3d 521, 529 (D. Ariz. 2019) ("A party waives the defense of lack of personal jurisdiction if the defense is not asserted in its first motion to dismiss.").

---

[10] *ECF 3, 5*.

Furthermore, the District Court had already compelled arbitration for the three out-of-state former named plaintiffs and confirmed two other out-of-state opt in plaintiffs were not subject to arbitration, exercising jurisdiction over them. *ECF 71, pp. 7-8*. A court must have personal jurisdiction over a plaintiff in order to rule whether that party is subject to arbitration. *See Boon Glob. Ltd. v. United States Dist. Court (In re Boon Glob., Ltd.)*, 923 F.3d 643, 650 (9th Cir. 2019). Appellant even argued that such a defense was "not available" to it when it filed its first motion to dismiss because of the existence of an Arizona named plaintiff. *ECF 72, pp. 2-4*. By making this argument, Appellant conceded that it could not have a personal jurisdiction defense when there is an Arizona-based named plaintiff.[11]

Appellees also sought conditional certification, which Appellant opposed, and to which Appellees replied. *ECF 58, 64, 65*. The arguments contained in these pleadings articulated several disputes as to who was subject to arbitration.

On July 22, 2022, the District Court dismissed the First Amended Complaint contending it lacked personal jurisdiction on Appellant, as none of the new named plaintiffs were in Arizona. ER-35. It contended that it had personal jurisdiction over the original complaint (which did have an Arizona-based named plaintiff), but not

---

[11] This is essentially a concession that the Supreme Court's *BMS* decision does not apply to this case.

anymore under the amended complaint. It then gave Plaintiffs leave to file a second amended complaint.

### D. Second Amended Complaint and Second Amended Motion for Conditional Certification

Appellees filed a Second Amended Complaint adding Dylan Basch, an Arizona server who began his employment with Cracker Barrel when he was a minor, as a named plaintiff. *ECF 74*. Basch submitted a declaration noting he was unaware of entering into an arbitration agreement, but voiding any such agreement that he may have signed while he was a minor. SER-62. Appellant filed a motion to compel Basch to arbitration because in October 2019, seven months into his employment when he was still 16 years old, Basch had clicked a box during an online training program confirming he would abide by the terms of a lengthy arbitration agreement. SER-29-30. It asked the District Court to find that Basch did not disaffirm the arbitration agreement within a reasonable time after reaching the age of majority. But it did not contest any of the factual statements asserted by Basch. Appellees argued that Basch's voidance of the ADR agreement was reasonable and timely under Arizona law, as well as consistent with the District Court's prior ruling that other minors had voided the ADR agreement (where the voiding occurred 3-4 years after the age of majority). *ECF 80*. Appellees also noted that the District Court had previously made a ruling noting

that it could exercise personal jurisdiction over out-of-state plaintiffs as long as a named plaintiff was in Arizona. ER-36 ("[B]ecause the original complaint included allegations of a Plaintiff who worked in an Arizona restaurant, the defense of lack of personal jurisdiction was not available to Cracker Barrel when it filed its first Motion to Dismiss."). Appellant agreed with this ruling when seeking to dismiss the First Amended Complaint, conceding that "it could not raise the defense of lack of personal jurisdiction at any earlier stage of this litigation because" one of the prior named plaintiffs resided in Arizona. *ECF 62, p. 4, fn.2.*[12]

Meanwhile, on August 15, 2022, Appellees filed a motion for conditional certification, relying on this court's *Campbell* standard and the District Court's prior rulings, as well as referencing and providing additional evidence of Appellant's FLSA violations. *ECF 76,* SER-39-56. Because of disputes as to who may be subject to arbitration, Appellees proposed a notice that explicitly stated it was applicable to only those who are not subject to arbitration. SER-57-61. Appellant argued that the District Court should not exercise its discretion in how to manage the case via *Campbell* and, instead, follow the Fifth Circuit standard articulated in *Swales v. KLLM Transp. Services, L.L.C.*, 985 F.3d 430, 441-443 (5th Cir. 2021). *ECF 78*. Appellant also argued

---

[12] This statement contradicts Appellant's representations being made to this Court.

that notices should not be sent to those who it believes are subject to arbitration and should be limited to only Arizona-based potential plaintiffs. Appellees replied, emphasizing that nationwide notice is appropriate, partly because *BMS* does not apply to FLSA collective action cases, as explained by other courts, including within the Ninth Circuit. *ECF 79, pp. 6-7*. Furthermore, Appellant had previously argued that the personal jurisdiction defense was not available when the case was initiated because there was an Arizona-based named plaintiff at that time. *Id., pp. 8-9*. Appellees also argued that resolving disputes about who is subject to arbitration is an issue that is to be decided at the second stage of the collective action process. *ECF 79, pp. 4-5*.

### E. The District Court denies Appellant's Motion to Dismiss and grants conditional certification

On March 31, 2023, the District Court denied Appellant's motion to dismiss. ER-6-33. It found that it had personal jurisdiction over the out-of-state named plaintiffs because of Basch's contacts with Arizona and that Basch voiding the arbitration agreement was reasonable, given the facts presented, and consistent with its prior ruling. ER-10-15.

The District Court granted conditional certification under the two-step *Campbell* standard. ER-18-24. It confirmed that the disputes as to who is subject to arbitration should be resolved at the second stage of the process, as permitted by *Campbell*. ER-25-26. Therefore, it was appropriate to send the notice to all potential opt-in plaintiffs,

regardless as to arbitration status. The District Court also declined to apply *BMS* to FLSA cases and noted that the First Circuit and the majority of decisions within the Ninth Circuit allow nationwide notice in FLSA cases. ER-26-28. Importantly, in incorporating its prior decisions, the District Court held that limiting notice to only Arizona-based potential plaintiffs, "would be inconsistent with the Court's previous findings." ER-28.

### F.   <u>Appellant panics</u>

Appellant then filed a plethora of pleadings, including two motions to stay, a motion for reconsideration, a motion to certify interlocutory appeal under 28 U.S.C. § 1292(b), and a notice of appeal relating for the denial to compel Basch to arbitration. *ECF 83-85, 91, 96*. Appellant raised four issues regarding the Court's March 31, 2023 order for the interlocutory appeal. *ECF 84*.

Of relevance to the motion for reconsideration, the District Court revisited the scope of the putative collective and reiterated its original decision. SER-13-17. It recognized several disputes about arbitrability, noting that those are better resolved at the second stage of the certification process, especially considering the notice already alerted potential opt-ins "that they can only join the action if they are not subject to arbitration." SER-14. It also confirmed that the "list of remaining factual issues illustrates why the enforceability of Cracker Barrel's Arbitration Agreement must be

determined on a case-by-case basis" and that it "cannot possibly define which opt-in plaintiffs are certainly subject to arbitration at this juncture." SER-15.

The District Court also certified for appeal two of the four issues raised by Appellant. SER-20-22. It determined that one issue was moot and that the *Campbell* certification standard did <u>not</u> meet the § 1292(b) requirements. SER-22-23. It confirmed that the *Campbell* case controls and that *Swales* has no binding effect on the Ninth Circuit. *Id*. But Appellant has still raised this certification standard to this Court.

## <u>SUMMARY OF THE ARGUMENT</u>

<u>Interlocutory appeal is not appropriate</u> – Given the procedural history of this case, this Court should decline to exercise jurisdiction under § 1292(b). Appellant: a) sought and obtained substantive rulings concerning out-of-state plaintiffs, thus waiving the arguments supporting the relief it is seeking, b) waived service, c) is asking this Court to infringe on a District Court's discretion in how it manages its cases, and d) is seeking to require time-consuming discovery on over tens of thousands of potential opt-in plaintiffs prior to certification. Alternatively, the first issue raised by Appellant is not subject for review because the District Court specifically ruled it did not meet the § 1292(b) requirements.

<u>Issue No. 1</u> – This court should continue to follow the FLSA conditional certification standard articulated in *Campbell*, allowing for the two-step process. There

is no reason to infringe on the judicial discretion trial judges have in managing their cases, as permitted under *Campbell*.

Issue No. 2 – This court should allow notices to be sent nationwide. There is nothing unconstitutional about applying a uniform federal law to all potential plaintiffs nationwide. The FLSA statute allows for similarly situated plaintiffs to join the lawsuit after jurisdiction is established with respect to a named plaintiff. Appellant was properly served, the FLSA statute allows for representative actions, and nothing in the text of the FLSA requires every opt-in to establish specific personal jurisdiction. The Supreme Court's *BMS* decision does not apply to FLSA collective actions. Rule 4(k) also does not apply because it only matters for initial service, and Appellant waived service anyway. Regardless, because Appellant sought and received rulings concerning out-of-state plaintiffs, it cannot now seek dismissal on personal jurisdiction grounds. Finally, if there is a concern about the location of a particular plaintiff's case in federal court, a defendant's solution is through requesting a transfer of venue (28 U.S.C. §§ 1404, 1406), not dismissal.

Issue No. 3 – The District Court only found that the original four named plaintiffs were subject to arbitration. Appellant even admitted to this. *ECF 66, p. 2*. There are many disputes as to who is subject to arbitration. These disputes are to be resolved at the second stage of the conditional certification process, as allowed by *Campbell* and the trial judge's discretion in managing the case. It would be inefficient, a waste of

16

judicial resources, and a significant burden on the District Court and the parties to engage in an extraordinary amount of discovery to resolve arbitrability disputes prior to sending notices, especially considering the court-approved notice already states that it only applies to those servers who are not subject to arbitration.

Issue No. 4 – There is no clear error in the District Court's factual finding that Basch's voidance of the arbitration agreement was reasonable, given the fact-specific circumstances in this case. Appellant did not provide evidence that contradicted Basch's declaration or otherwise provide any facts that suggest the District Court committed clear error. Also, considering the District Court's prior ruling (accepted by Appellant) that two other former minors had acted reasonably in voiding the arbitration agreement in situations where more time had passed compared to Basch, the "law of the case" doctrine prohibits a different result.

## **ARGUMENT**

## I.    **This Court should not exercise jurisdiction under 28 U.S.C. § 1292(b)**

Although the motions panel granted interlocutory appeal, this Court has an independent obligation to confirm that it has jurisdiction under 28 U.S.C. § 1292(b). *Wilkinson v. Facebook, Inc.*, 2024 U.S. App. LEXIS 12163, *24-25 (9th Cir. May 21, 2024) (citing *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130-31 (9th Cir. 2022)).

The overarching issue presented by Appellant concerns a district court's discretionary decision in its rulings on conditional certification. An order granting collective action status does not present a controlling question of law. *Blackie v. Barrack*, 524 F.2d 891, 898, n.13 (9th Cir. 1975); *Lillehagen v. Alorica, Inc.*, 2014 U.S. Dist. LEXIS 67963, *5-7 (C.D. Cal. May 15, 2014). All the District Court is doing is approving a notice to be distributed to *potential* plaintiffs who have not yet joined the lawsuit. The Supreme Court has noted that "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

Furthermore, resolving disputes as to who is subject to arbitration prior to conditional certification will not "materially advance the ultimate termination of the litigation" because that would require conducting discovery regarding tens of thousands of servers prior to sending out notices. Instead, this is a matter for the second stage of conditional certification process. Considering opt-in rates for FLSA collective actions are usually around 15% – 20%, and the notice already states it applies to those who are not subject to arbitration, the scope of discovery on arbitrability at the second stage will be minimal compared to Appellant's proposal.

Another reason to reject interlocutory appeal here is because this Court's decision may ultimately be an advisory opinion. This is for two reasons. *First*, Appellant waived its right to raise the personal jurisdiction defense when it did not

18

raise such an argument in its first motion to dismiss (ECF 21) and, instead, chose to have the District Court adjudicate the merits of the enforceability of the initially named out-of-state plaintiffs' arbitration agreements.[13] *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-05 (1982); *Boon Glob*, 923 F.3d at 650; *Jones v. Medtronic Inc.*, 411 F. Supp. 3d 521, 529 (D. Ariz. 2019) ("A party waives the defense of lack of personal jurisdiction if the defense is not asserted in its first motion to dismiss."); *Henrietta Mine LLC v. A.M. King Idus.*, No. cv-20-01106-PHX-SMB, 2021 U.S. Dist. LEXIS 2391, *5-7 (D. Ariz. Jan. 7, 2021) (discussing waiver of personal jurisdiction arguments). It even utilized Arizona law to argue three named out-of-state plaintiffs' arbitration agreements were enforceable, directly invoking the privileges of doing business in Arizona. *Burger King Corp*, 471 U.S. at 474-76. Such consent would negate the need to even conduct a minimum contacts analysis. *See Repwest Ins. Co. v. Praetorian Ins. Co.*, 890 F. Supp. 2d 1168, 1185 (D. Ariz. 2012) (Minimum contacts with the forum state is not a requirement if the defendant has consented to jurisdiction.).

Appellant previously argued that the defense was not available because they could only seek to dismiss named plaintiffs and not opt-in plaintiffs. *ECF 72, p. 3*. But that is not correct because opt-in plaintiffs are to be treated as party plaintiffs. In fact, the defendants in other cases that are relevant to the issues raised in this appeal did

---

[13] Appellees recognize that the District Court disagreed with Appellees. SER-74-77.

timely file motions for dismissal on personal jurisdiction grounds with respect to out-of-state opt-in plaintiffs. *See Canaday v. Anthem Cos.*, 439 F. Supp. 3d 1042, 1050 (W.D. Tenn. 2020); *aff'd* 9 F.4th 392, 405 (6th Cir. 2021) (defendant prevailing on a motion to dismiss out-of-state opt-in plaintiffs for personal jurisdiction reasons, which was affirmed by the Sixth Circuit); *Waters v. Day & Zimmerman NPS, Inc.*, 464 F. Supp. 3d 455, 456 (D. Mass. 2020), *aff'd* 23 F.4th 84 (1st Cir. 2022) (although denied, the defendant timely filed a motion to dismiss out-of-state opt-in plaintiffs under Rule 12(b)(2)).

*Second*, Appellant should be judicially estopped from arguing that there is no personal jurisdiction. It acknowledged the defense was "not available" when it filed its first motion to dismiss because of the existence of an Arizona named plaintiff. *ECF 62, p. 4, fn. 2*[14]*; ECF 72, pp. 2-4*. There currently exists an Arizona named plaintiff (Basch).

Finally, and in the alternative, although an entire order may normally be reviewed for interlocutory appeal, the District Court specifically ruled that the first issue (regarding the *Campbell* certification standard) did not meet the § 1292(b) requirements. SER-22-23. The Fourth Circuit recently rejected a similar request to try to adopt the *Swales* standard. *See Cronin v. Bank of Am. Corp.*, C.A. No. 3:23-cv-

---

[14] Appellant stated: "Defendant wishes to note, as a threshold matter, that it could not raise the defense of lack of personal jurisdiction at any earlier stage of this litigation because, prior to the filing of the First Amended Complaint, one named Plaintiff, Ms. Gillespie, resided in Arizona and/or was at least asserting a claim arising out of work performed for Cracker Barrel in Arizona."

00813-KDB-DCK, 2024 U.S. Dist. LEXIS 138599, *2-4 (W.D.N.C. Aug. 5, 2024) (rejecting interlocutory appeal regarding the FLSA conditional certification standard and discussing the Fourth Circuit's handling of a similar request in 2022). Therefore, revisiting the *Campbell* conditional certification standard is not appropriate for consideration by this Court.

## II. There is no reason to overturn *Campbell* or infringe on a district court's discretion as to how it manages its cases

Appellant's first issue concerns the conditional certification standard. *Appellant Brief, pp. 29-46*. Should this Court disregard a district court's discretion in how it manages its cases regarding the FLSA collective action process, overturn its own decision in *Campbell*, and adopt the Fifth Circuit's *Swales* standard? No.

*Campbell* provides for a lenient, discretionary case-management standard to certify a collective action so that a court-approved notice may be sent to putative collective action members. *Campbell*, 903 F.3d at 1109-10. Appellees met this standard, filing dozens of declarations from servers who worked for Appellant in about 30 states explaining the same FLSA violations occurring in its stores around the country (SER-42-48, 51-56; *ECF 8, 15, 58, 76*), an affidavit from a former corporate-level employee articulating Appellant's disregard of the FLSA (SER-39-41), a universally applied "side-work" chart that lists server job duties that are prohibited under the tip-credit payment scheme (SER-49-50), and photographs of examples of violations (SER-63-72).

This Court addressed the certification standard in detail in 2018. *Campbell*, 903 F.3d at 1110-16. The two-step process is this Circuit's standard and precedent. *See Tijerino v. Stetson Desert Project*, LLC, 934 F.3d 968, 976 (9th Cir. 2019). As "the proper means of managing a collective action," this is a "case management" issue and "thus a subject of substantial judicial discretion." *Campbell,* 903 F.3d at 1110. Appellant is wrong to say that this standard is "outdated." District courts within the Ninth Circuit regularly rely on this standard, including several recent decisions. *See, e.g., Holifield v. NexusCw, Inc.*, 2024 U.S. Dist. LEXIS 149038, *15-24 (S.D. Cal. Aug. 20, 2024); *Dunne v. Quantum Residential Inc.*, 2024 U.S. Dist. LEXIS 108285, *11-12 (W.D. Wash. June 18, 2024); *Terry v. Hodges*, 2024 U.S. Dist. LEXIS 4330, *2-4 (D. Or. Jan. 9, 2024); *Harris v. Diamond Dolls of Nev., LLC*, 2023 U.S. Dist. LEXIS 219674, *2-5 (D. Nev. Dec. 11, 2023); *Richter v. Autozoners, LLC*, 2023 U.S. Dist. LEXIS 200161, *7-8 (D. Mont. Nov. 7, 2023)).

Other circuits also follow the same two-step process. *See Waters*, 23 F.4th at 89; *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515-20 (2d Cir. 2020); *Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 223-26 (3d Cir. 2016); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102-05 (10th Cir. 2001); *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1339 (11th Cir. 2023).

Courts around the country have acknowledged the *Swales* decision but rejected its reasoning, sticking with the two-step approach. *See, e.g., Thornton v. Tyson Foods,*

*Inc.*, 683 F. Supp. 3d 885, 888-90 (W.D. Ark. 2023); *Midkiff v. Anthem Co., Inc.*, 640 F. Supp. 3d 486, 492-93 (E.D. Va. 2022) (referencing the standard applied by district courts within the Fourth Circuit); *Rivera v. CHSPSC, LLC*, C.A. No. 2:23-cv-00336-KWR-KK, 2024 U.S. Dist. LEXIS 130118, *9 (D. N.M. July 23, 2024); *Johnson v. Lazer Spot, Inc.*, C.A. No. 1:22-cv-1852-MHC, 2024 U.S. Dist. LEXIS 11865, *15, n.5 (N.D. Ga. Jan. 19, 2024).

Even the Fifth Circuit, when addressing *Swales*, has acknowledged "there is no one-size-fits-all analysis or mechanical test to apply: 'The bottom line is that the district court has broad, litigation-management discretion,' 'cabined by the FLSA's 'similarly situated' requirement.'" *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 337 (5th Cir. 2023); *see also Brixey v. McAdoo's Seafood Co., LLC*, C.A. No. SA-23-cv-00232-DAE; 2024 U.S. Dist. LEXIS 1467, *4-5 (W.D. Tex. Jan. 2, 2024) (certifying a collective action in a tip-credit violation case and stating "the Fifth Circuit has approved the continued consideration of the *Lusardi* factors by district courts faced with a motion for FLSA notice"). Appellant has not shown that a different outcome would be reached even if the Fifth Circuit standard is applied.

Appellant also references *Twombly/Iqbal* in support of its position to suggest the hundreds of opt-in plaintiffs who joined this lawsuit are creating some sort of "*in terrorem*" settlement pressure by threatening expensive discovery. *Appellant Brief, pp. 37-38*. That is not correct. It is Appellant that is asking this Court to: a) create a standard

that *requires* the parties to first conduct discovery on tens of thousands of plaintiffs pre-certification, instead of a small fraction of that after the opt-in period; b) disregard the substantial evidence presented of its uniform nationwide illegal pay practices; and c) disregard the financial incentive it has to get away with violating the tip-credit scheme on a large-scale nationwide basis. Regardless, there is no evidence in the record to suggest the District Court abused its discretion. Finally, if there were any problems with the complaint, Appellant could have filed a 12(b) motion under *Twombly/Iqbal*. It did not do so.

Appellant also attempts to rely on *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018) to contend that *Campbell* – which came out after *Encino* – conflicts with the Supreme Court's analysis. *Encino* essentially says that courts must give the FLSA a "fair reading" instead of "construed narrowly." *Id*. at 88-89. *Campbell* does not conflict with *Encino*. Therefore, this Court should reject Appellant's proposal.

**III.    BMS does not apply and nationwide notice is appropriate**

The second issue raised by Appellant is whether the Supreme Court's *BMS* decision (*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 582 U.S. 255 (2017)) applies to FLSA collective actions such that only servers in Arizona should be provided notice, instead of all servers nationwide subjected to the same FLSA violations. *Appellant Brief, pp. 46-61*. Appellant argues that the Supreme Court's *BMS* decision prevents the District Court from asserting jurisdiction over out-of-state

plaintiffs. The District Court declined to extend *BMS* to FLSA collective actions, tracking the First Circuit (in *Waters*) and several district courts within the Ninth Circuit. ER-27-28.

As discussed below, the reasons Appellant is wrong, along with the circuits applying *BMS* to FLSA collective actions, is primarily because those arguments and decisions lie upon: (1) misconstruing the phrases "representative" action and "mass action;" and (2) contending that Rule 4(k) applies to such claims. Ultimately, a court need only have personal jurisdiction over a representative employee plaintiff.

### A.      The BMS decision

*BMS* – which arose via an appeal from the California Supreme Court based on the defendant quashing service of summons with respect to the out-of-state plaintiffs[15] – held that the Fourteenth Amendment prevented state courts from considering state-law mass actions for out-of-state plaintiffs with no connection to the forum state. *Bristol-Myers*, 582 U.S. at 261-69. *BMS* involved eight separate complaints brought by 86 California residents and 592 non-residents regarding their use of the prescription drug Plavix. All 592 nonresident plaintiffs – having no ties to California – alleged 13 causes of action under California state law.[16] *Bristol-Myers*, 582 U.S. at 259. The Supreme Court's decision concerned principles of interstate sovereignty and a state's

---

[15] *Bristol-Myers Squibb Co.*, 1 Cal. 5th 783, 790, 377 P.3d 874, 878-79 (Cal. 2016) (subsequent history omitted)

[16] *BMS* was not a representative action.

"power to render a valid judgment" over out-of-state defendants. *Id*. at 263 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). The limitations in *BMS* were later reiterated by the Supreme Court. *Ford Motor Co. v. Mont. Eighth Judicial Distr. Ct.*, 592 U.S. 351, 369 (2021) ("We found jurisdiction improper in [*BMS*] because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims."). *BMS* explicitly stated that its holding does not address "restrictions on the exercise of personal jurisdiction by a federal court." *Id*. at 269.

### B.     The purpose and history of the FLSA

Because cases that apply *BMS* to FLSA claims rely on incorrect historical interpretations of Section 216(b), a brief history of the law is warranted.

The FLSA was enacted to combat unfair wage and hour practices experienced throughout the country during the Great Depression. *See* 29 U.S.C. § 202(a). The stated purpose of the Act is to "correct and as rapidly as practicable" those conditions "in such industries without substantially curtailing employment or earning power." 29 U.S.C. § 202(b). "Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).

For over 70 years, the FLSA has been interpreted to allow for nationwide collective actions. Section 216(b) has been revised by Congress on several occasions during that time, yet Congress has never seen fit to foreclose the nationwide FLSA action. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (if courts interpret a statutory provision in a certain manner, and Congress continues to use the same verbiage, it is assumed they meant to adopt the judicial or administrative interpretation of that provision). Indeed, courts approving collective actions during these decades did not exclude opt-in plaintiffs solely because they worked in another state.

### C.    <u>Portal-to-Portal Act</u>

FLSA collective action claims have always been representative actions. The only significant curtailment to the representative nature of FLSA actions came in the Portal-to-Portal Act. As Senator Donnell noted in March 18, 1947, non-plaintiff union representatives or agents at the time were allowed to bring FLSA claims on behalf of the employee plaintiffs, sometimes without even getting their permission to do so. This led to the "unwholesome" prospect of "champertous situations" wherein a non-plaintiff or non-employee union "representative" could file a collective action. 93 Cong. Rec. 538, 2182 (1947). Senator Donnell defined this as a "representative action." *Id.* In contrast, there was no problem if an employee plaintiff brought a claim on behalf of himself and others similarly situated, which was defined as a "collective action." *Id.*

27

Those "representative" actions (i.e., those brought by non-plaintiffs), not collective actions (i.e., those brought by a representative plaintiff), was what the Portal-to-Portal Act was meant to forbid. *See Canaday.,* 9 F.4th at 413 (Donald, J., dissenting); *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) ("[T]he enforcement scheme in the Portal-to-Portal Act largely codified the existing rules governing spurious class actions, with special provisions intended to redress the problem of representative actions brought by unions under earlier provisions of the FLSA and the problem of 'one-way' intervention."); *Vanegas v. Signet Builders, Inc.*, No. 23-2964, 2024 U.S. App. LEXIS 20780, *30 (7th Cir. Aug. 16, 2024) (Rovner, J. dissenting)

As relevant here, all the Act did was to require the actual plaintiffs to represent the class and opt-in plaintiffs by changing the language to more accurately refer to "employees" rather than their "representatives." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 173 (1989)[17]. The Supreme Court explicitly rejected the notion that the FLSA

---

[17] *Compare* Fair Labor Standards Act of 1938 (1938), at § 16(b) ("Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, **or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated**.") (emphasis added) *with* Fair Labor Standards Act of 1938 (2024), at § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

was intended to relieve employers of "multiparty actions," noting that the Portal-to-Portal Act left intact the ability for employees to bring collective actions in their own right, and on behalf of those of "similarly situated" employees, which freed "employers of the burden of representative actions." *Id*. at 173. This, combined with Congress's stated intent that the FLSA remedy harmful pay practices affecting *interstate commerce*, shows Congress' intent that the FLSA allows for nationwide collective action suits.

### D. The text of Section 216(b) shows collective actions are representative actions.

The cause of action here is based on the FLSA, a federal law that applies in all states and contains the following language:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b).

Section 216(b) allows for a representative named plaintiff to "maintain" an action in a court of "competent jurisdiction," which can in turn decide the named plaintiff's case, as well as those who are "similarly situated." To "maintain" a suit means to initially bring a suit. *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 695 (2003). The term "competent jurisdiction" does not apply to the opt-in parties by

the plain text of Section 216(b). The only requirement for such parties is that they be "similarly situated." While the term "competent jurisdiction" generally means one with subject matter jurisdiction, the Supreme Court has noted that the phrase sometimes refers to a court with both subject matter jurisdiction *and* personal jurisdiction. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). The latter interpretation applies to Section 216(b). A court of "competent jurisdiction" was understood at the time of the FLSA's original enactment to be one with personal *and* subject matter jurisdiction. *Clark v. Wells,* 203 U.S. 164, 171 (1903).

So, if the Court were to agree with Appellant's argument, the result would be potential opt-in plaintiffs (who, by definition, are similarly situated to a named plaintiff) would become barred from joining a collective action simply because he/she is in another state. The only recourse for that plaintiff would be to file a new and separate case, as a named plaintiff, in the other state. Such a requirement would negate the benefit of the opt-in provision provided by section 216(b) for this potential plaintiff and would result in a hydra of litigation across the country. The FLSA was not intended to create such a scenario, especially considering there was a single case already pending.

Accordingly, the text of Section 216(b) permits an employee to bring an action for and on behalf of those other similarly situated employees. While the court in which the representative employee brings the suit must have personal and subject matter

jurisdiction over the representative employee, Section 216(b) has no such requirement for the opt-in employee plaintiffs.

### E.   Courts have interpreted section 216(b) claims to be representative actions

This Circuit's jurisprudence shows FLSA claims are treated as representative actions. *Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009) (refusing to certify an FLSA collective because the named plaintiffs had no standing to bring the claim after settling their own, individual claims and therefore had no "legally cognizable interest in the outcome"); *Ortiz v. True Food Kitchen Holdings, LLC*, No. CV-22-01821-PHX-DGC, 2023 U.S. Dist. LEXIS 51812, *10 (D. Ariz. Mar. 27, 2023) (same).

The personal jurisdiction inquiry must occur "at *the level of the suit*, not at the level of any particular claim or party." *See Canaday*, 9 F.4th at 408 (Donald, J., dissenting). "An FLSA collective action is designed to be a single lawsuit throughout the entire litigation process. The singularity of the lawsuit does not change simply because new plaintiffs with the same or similar claims as to the named plaintiff might join the collective at a later time." *Id*.

While it is true this Court held in *Campbell* that opt-in plaintiffs are "party plaintiffs," that does not give them the right to amend the operative complaint, file their own motion for summary judgment, or make any other material decision concerning

the direction of the case. *See* 7B Wright & Miller, FED. PRAC. & PROC. CIV. § 1807 n.14 (3d ed.) ("[T]he section 216 plaintiff does not formally appear before the court or file a pleading; he simply files his written consent. Once the consent is filed, the section 216 action is maintained by the named plaintiffs 'for and in behalf of' the person who has consented." (citation omitted) (cleaned up)); *Prickett*, 349 F.3d at 1297 ("[P]laintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole."). Section "216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche*, 493 U.S. at 170. Courts only look to the opt-in plaintiffs when, for whatever reason, the named plaintiffs no longer represent the class. *See Campbell*, 903 F.3d at 1099 (permitting the opt-in plaintiffs to appeal decertification despite the named plaintiffs settling separately). If no opt-in plaintiff were capable of establishing personal jurisdiction absent the original named plaintiffs in this scenario (and no waiver had occurred), a court would presumably consider transferring venue to another federal court under 28 U.S.C. § 1404.

32

### F. **The First Circuit *Waters* decision**

The First Circuit correctly declined to apply *BMS* to Section 216(b) claims in *Waters v. Day & Zimmerman*, 23 F.4th 84 (1st Cir. 2022). *Waters* – in affirming the lower court's decision to send notices nationwide – determined that the Fifth Amendment, not the Fourteenth Amendment, applies to FLSA claims, because Rule 4(k) does not define the bounds of personal jurisdiction in federal court concerning a federal case. *Id.* at 92-94. The "Fourteenth Amendment does not directly limit a federal court's jurisdiction over federal-law claims." *Id*. at 92. "[T]he 'constitutional limits' of a federal court's jurisdiction over federal-law claims 'are drawn in the first instance with reference to the [Due Process Clause of the Fifth Amendment].'" *Waters*, 23 F.4th at 92 (citing *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991)). "The Fifth Amendment does not bar an out-of-state plaintiff from suing to enforce their rights under a federal statute in federal court if the defendant maintained the 'requisite minimum contacts' with the United States." *Id*. The First Circuit directly rejected the Sixth and Eighth Circuits' analyses in *Canaday* and *Vallone*. *Id*. at 97-99.

### G. **Rule 4(k) does not apply.**

Appellant waived service of process. SER-117. So, this discussion should be moot.[18] But even if it had not waived service, Section 216(b) does not require Rule 4(k)

---

[18] Also, in *BMS*, the defendant originally "moved to quash service of summons on the nonresidents' claims." *Bristol-Myers*, 582 U.S. at 259. Had it not done so, it would have likely waived the argument that eventually made it to the Supreme Court.

service for opt-in plaintiffs nor new complaints to be served. Instead, Section 216(b) allows for similarly situated opt-in plaintiffs to simply file their written consent with the district court. This is a non-discretionary right authorized by the statute because it is a representative action. *See, e.g., Ortiz*, 2023 U.S. Dist. LEXIS 51812, at *9 ("[T]he fact remains that a collective action under the FLSA is a representative action. The named plaintiff sues on behalf of all others.").

Rule 4, titled "Summons," and more specifically Rule 4(k), titled "Territorial Limits of Effective Service," are only concerned about service and establishing jurisdiction at the time of service, not as employees opt-in. If the drafters of Section 216(b) wanted Rule 4(k) to apply to FLSA opt-in plaintiffs, they would not have allowed such plaintiffs to join simply by filing opt-in forms. *Waters*, 23 F.4th at 94. Once service is properly achieved, Rule 4(k) is of no consequence. *Id.* at 96. There is nothing in Rule 4 that suggests it "constrains a federal court's power to act once a summons has been properly served." Also, Rule 82 directly states the "rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." FED. R. CIV. P. 82. So Rule 4(k) cannot limit federal court jurisdiction.

### H. <u>The circuits applying *BMS* to Section 216(b) claims are wrong.</u>

The Third, Sixth, Seventh, and Eighth Circuits have applied *BMS* to FLSA actions in order to limit the federal courts' jurisdiction. *See Vanegas v. Signet Builders,*

*Inc.*, 2024 U.S. App. LEXIS 20780 (7th Cir. Aug. 16, 2024); *Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021); *Canaday*, 9 F.4th at 397. *Canaday* and *Vanegas* contain dissents that articulate in detail the flaws with the majorities' reasonings. *Canaday*, 9 F.4th at 404-416; *Vanegas*, 2024 U.S. App. LEXIS 20780, *26-44.

In each of those cases, the courts limited the scope of the notice to just the potential plaintiffs who had claims in the state in which the case was pending. Key to that analysis is the mistaken idea that an opt-in plaintiff cannot be represented by a named plaintiff in an FLSA action and such claims are instead like the "mass action" in *BMS*. *See Canaday*, 9 F.4th at 397. These courts further reasoned Congress' intent was to curtail FLSA representative actions. *See Vanegas*, 2024 U.S. App. LEXIS 20780, *11. And, according to them, because the text of Section 216(b) does not permit nationwide service of process, every plaintiff must meet the requirements of Rule 4(k)(1). *See Fischer*, 42 F.4th at 370. All these underlying assumptions are incorrect.

First, as discussed above, Section 216(b) claims *are* representative actions regardless of the label of the opt-in plaintiff.

Second, these courts' findings that Section 216(b) claims are "mass actions" like the one in *BMS* are incorrect. For example, citing to § 216(b), *Canaday* stated "[i]n an FLSA collective action, as in the mass action under California law, each opt-in plaintiff becomes a real party in interest, who must meet her burden for obtaining relief and

satisfy the other requirements of party status." *Canaday*, 9 F.4th at 397. These courts are inserting requirements into section 216(b) that do not exist in the text of the statute. *Canaday* also relied on *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 fn.1 (3rd Cir. 2013) in support of this incorrect assertion. This was incorrect because *Abraham* actually stated "[u]nlike a class action, a mass action has no representative or absent members because all plaintiffs in a mass action are named in the complaint and propose a joint trial of their claims." *Id*. That is different than the reference to "mass action" as used in *Campbell* because an FLSA collective action does have a representative and not all plaintiffs are named in the complaint. *BMS* was not a representative action because all plaintiffs there were pursuing their claims individually via multiple lawsuits. *See Bristol-Myers*, 1 Cal. 5th at 789, *rev'd on other grounds*, *Bristol-Myers*, 582 U.S. at 259. Ultimately, the phrase "mass action" has been incorrectly used by these other circuits synonymously with a non-representative action.

Third, Rule 4(k) does not apply to opt-in plaintiffs for the reasons previously stated, and as articulated in *Waters* and the dissents in *Canaday* and *Vanegas*.

While these three errors are dispositive, it is also worth noting Section 216(b) claims cannot fairly be characterized as like the one at issue in *BMS*. Section 216(b) claims involve a single, federal cause of action. No interstate principles of federalism are implicated by out-of-state plaintiffs taking advantage of a foreign state's laws. The injuries to be remedied in such claims are to the laws of the United States, not the laws

of the disparate states. Section 216(b) claims and those considered in *BMS* are completely different.

### I. <u>Application to this case</u>

Gillespie – based in Arizona and one of the original named plaintiffs – initially established jurisdiction over Appellant. As explained above, Appellant waived service, litigated the initial disputes, and obtained substantive rulings with respect to plaintiffs both in and out of Arizona. Basch later became the subsequent named Arizona plaintiff who also established jurisdiction over Appellant. The case is "maintained against" Appellant via Basch in a "court of competent jurisdiction." Employees who are "similarly situated" may join the lawsuit, like the hundreds who already joined. There is nothing that limits the "similarly situated" analysis to only Arizona.

### J. <u>The District Court's prior rulings moot Appellant's argument</u>

Finally, the District Court specifically noted "[t]o hold otherwise would be inconsistent with the Court's previous findings." ER-28. This makes sense because Appellant requested, and the District Court made, substantive rulings relating to out-of-state plaintiffs, even applying Arizona law to these plaintiffs. That did not happen in the five other appellate courts that have addressed this issue. Also, when disputing that it waived the personal jurisdiction defense, Appellant conceded that this defense was not available because of the existence of an Arizona-based named plaintiff. *ECF 62, p. 4, fn. 2; ECF 72, pp. 2-4, 6.* The District Court agreed with Appellant in its ruling.

SER-75 (one of the "previous findings" incorporated in the District Court's order).

Accordingly, Appellant is judicially estopped from arguing to the contrary. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."); *Milton H. Greene Archives v. Marilyn Monroe LLC*, 692 F. 3d 983, 993 (9th Cir. 2012).

Ultimately, Appellant is attempting to utilize Rule 4(k) to circumvent the FLSA by preventing similarly situated servers from being informed about this lawsuit. That is a misapplication of Rule 4(k), not what *BMS* intended, and contrary to the plain language of Section 216(b).

## K. Alternatively, the correct procedure is for Appellant to request a venue transfer

Alternatively, even if there was a personal jurisdiction problem, the solution is not dismissal. It is transferring venue under 28 U.S.C. § 1404(a) or § 1406(a). *See Neumann v. Red Rock 4-Wheelers, Inc.*, C.A. No. 2:19-cv-02160-ART-EJY, 2022 U.S. Dist. LEXIS 146131, *15 (D. Nev. Aug. 15, 2022) ("Transfer of venue is appropriate where… venue is proper, but personal jurisdiction is lacking."). Appellant never

challenged venue under FRCP 12(b)(3).[19] There is no need to have personal jurisdiction over a defendant in order to transfer venue. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962); *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964); *Southard v. Kipper Tool Co.*, C.A. No. 3:15-cv-03621-JSC, 2023 U.S. Dist. LEXIS 188279, *6-7 (N.D. Cal. Oct. 19, 2023) ("[A] district court may also transfer an action pursuant to 28 U.S.C. § 1404(a), regardless of whether venue is proper or the transferring court has personal jurisdiction of the defendant.").

This further supports why *BMS* does not apply. There is no state court procedure to transfer a civil case from one state court to another state court. The only solution is dismissal without prejudice. But the federal court rules do provide for such a mechanism.

## IV. Resolving any arbitrability disputes are appropriate for the second stage of the conditional certification process

### A. Background

Appellant next argues that notices should not be provided "to individuals whom the District Court already determined to be bound by an enforceable arbitration agreement." *Appellant Brief, pp. 61-66*. That is literally only four people – the four original named plaintiffs. ER-45-54. But now Appellant claims that the District Court

---

[19] Appellant's only arguable challenge to venue was in the context of moving to compel arbitration.

made a ruling that tens of thousands of servers are bound to arbitrate their claims. That is not correct. There is no other ruling as to who is bound to arbitration. This was even admitted by Appellant. *ECF 66, p. 2*.[20]

**B.     Disputes exist as to who is subject to arbitration**

The District Court recognized that there are at least three sets of disputes as to who is bound to arbitrate their claims. ER-25, SER-15-16. Appellant recognized and accepted this dispute. *ECF 66, p. 2*. There is also another dispute, which includes the group of adult servers who had signed the arbitration agreement, ended their employment, and then were re-hired but did not re-sign the arbitration agreement. *See Varna v. TCC Wireless, LLC*, 478 F. Supp. 3d 724, 731 (N.D. Ill. 2020) (denying arbitration for a rehire and noting that the arbitration agreement "said nothing about what would happen if [the employee] were terminated, but later rehired"). Appellant does not address this group, but Appellees argued that such servers are not subject to arbitration. *See ECF 65, pp. 8-9, ECF 69, pp. 6-7, ECF 79, pp. 4-5*. The District Court recognized this additional category in a subsequent order. SER-15-16. Appellant also changed its arbitration agreement in November 2019. SER, 79-86, 112-116; *ECF 66, fn. 2*. The District Court only determined that the 2015 arbitration agreement was

---

[20] "The Court issued an Order stating that the Arbitration Agreement is 'enforceable' and dismissing the four previous Named Plaintiffs (Order, ECF 47). The Parties have not argued and the Court did not issue an Order regarding the enforceability of the Arbitration Agreement for the three sub-groups identified by Plaintiffs, ECF 60 at 2."

enforceable under Arizona law. It has made no ruling as to the enforceability of the November 2019 arbitration agreement, which is substantively different than the prior version. Potential opt-in plaintiffs who fall under this November 2019 arbitration agreement still have the right to argue that this agreement is substantively unconscionable. The District Court also pointed out that it "cannot possibly define which opt-in plaintiffs are certainly subject to arbitration at this juncture." SER-16. This Court should not force the District Court to undergo an extensive fact-finding mission of evaluating, on an individualized-basis, potential arbitrability prior to conditional certification, especially given the language in the notice.

### C.    <u>The District Court made a decision based on the evidence presented</u>

Appellant also consented to obtaining the discretionary ruling from the District Court based on the evidence presented. Appellant has provided no evidence to suggest the District Court abused its discretion by refusing to resolve these disputes at the first stage of the conditional certification process. For example, Appellant does not articulate: a) whether a server was a minor at the time of signing or currently, b) what age it used to determine if a server was considered a minor (which is relevant because there are differences as to the definition of a minor depending on the state in which the minor resides), c) how many servers (and whether/when they were a minor) signed the 2015 arbitration agreement compared to the November 2019 arbitration agreement, or d) who signed-off on an arbitration agreement, left his/her employment, and then

returned but did not re-sign the agreement. Also unknown are circumstances surrounding each potential opt-in who may still be able to void the arbitration agreement if it was in fact signed when the employee was a minor. Finally, because the approved notice states that only those not subject to arbitration may join the lawsuit, any alleged policy concerns about improperly stirring-up litigation are moot.

### D. Resolving arbitrability disputes is appropriate for the second stage of the conditional certification process

The District Court did not abuse its discretion in deciding to defer resolving any disputes about who is subject to arbitration until the second step of the certification process. ER-25-26, SER-14-17. Other courts have followed this approach. *See Meija v. Bimbo Bakeries USA, Inc.*, No. CV-16-00654-TUC-JAS, 2017 U.S. Dist. LEXIS 222183, at *9, n.7 (D. Ariz. Aug. 14, 2017) (whether certain plaintiffs are subject to mandatory arbitration is "more appropriately considered in the second stage of this action where discovery has been completed and the standard is more stringent; these issues are not a bar to conditional certification under the low burden of stage one in this FLSA collective action."); *Monplaisir v. Integrated Tech Grp., LLC*, No. C 19-1484 WHA, 2019 U.S. Dist. LEXIS 132887, *9-10 (N.D. Cal. Aug. 6, 2019) (granting conditional certification and deferring issue of whether arbitration agreements are valid and enforceable to second stage of collective action process); *Gonzalez v. Diamond Resorts Int'l Mktg.*, Case No. 18-cv-979-APG-CWH, 2019 U.S. Dist. LEXIS 126434, *13-14 (D. Nev. July 29, 2019) (same).

Appellant mainly relies on *Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-06751-JSC, 2021 WL 2805604 (N.D. Cal. July 6, 2021) to argue that the District Court erred. But in *Droesch*, there was no dispute about who was subject to the agreement. Such a dispute does exist here. Furthermore, the approved notice in *Droesch* did not state that it was only applicable to those that are not subject to arbitration. Here, the notice does clearly make such a statement. Similarly, the *Bigger* case does not support Appellant's position. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020). The *Bigger* case is contrary to the Ninth Circuit's *Campbell* standard. But even if it did apply, it does not help Appellant:

> [W]hen a defendant opposing the issuance of notice alleges that proposed recipients entered arbitration agreements waiving the right to participate in the action, a court may authorize notice to those individuals unless (1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.

*Id.*, 947 F.3d at 1047. Here, Appellees are contesting the validity of the arbitration agreement based on the disputes as to who is subject to the agreement. The same issue applies with respect to the *Sandbergen* case cited by Appellant. *See Sandbergen v. Ace Am. Ins. Co.*, No. 18-cv-04567-SK, 2019 WL 13203944, *4 (N.D. Cal. June 17, 2019). In *Sandbergen*, the plaintiffs actually stipulated that any potential class member who signed the arbitration agreement would proceed with arbitration. As the District Court noted, that is not the situation here. ER-25-26. Finally, to reiterate, this is ultimately a

discretionary case management decision. *See Hoffmann-La Roche*, 493 U.S. at 169-72.

Therefore, the District Court's decision must be affirmed.

**V.    The District Court did not commit clear error when making a factual determination that Basch voided the arbitration agreement.**

The District Court made a factual determination that Basch acted reasonably when voiding the arbitration agreement. ER-13-15; SER-16, n.12. Appellant challenges this finding.

### A.    Standard of review

"[F]indings of fact underlying the district court's decision" are reviewed for "clear error." *Lopez v. Aircraft Serv. Int'l*, 2024 U.S. App. LEXIS 17784, *5 (9th Cir. July 19, 2024) (citing *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023)). "Under the clearly erroneous standard of review, an appellate court must accept the lower court's findings of fact unless upon review of the appellate court is left with the definite and firm conviction that a mistake has been committed." *Yeseta v. Baima*, 837 F.2d 380, 386 (9th Cir. 1988).

### B.    Arizona state law applies

Arizona law allows contracts entered into as a minor to be voided without consideration of whether the voidance occurred as a minor or an adult. *St. Paul Fire & Marine Ins. Co. v. Muniz*, 504 P.2d 546, 548 (Ariz. App. 1972); *Almada v. Ruelas*, 96 Ariz. 155, 158, 393 P. 2d 254, 256 (1964) ("Where a minor has executed a conveyance

44

and wishes to avoid its effect he must renounce the instrument 'within a reasonable time' after reaching his majority.").

### C. **Factual and procedural background**

The parties dispute whether Basch's voidance of the arbitration agreement within 18 months of reaching the age of majority was reasonable. In confirming its initial decision (ER-13-15) that Basch properly voided the arbitration agreement, the District Court reiterated that "[b]ased on Plaintiff Dylan Basch's circumstances, the Court found that eighteen months was a reasonable time for him to disaffirm Cracker Barrel's Arbitration Agreement." SER-16, n.12. So, let's look at Basch's "circumstances."

Basch started working for Appellant in Arizona in March 2019 when he was 16 years old. SER-62. He attested that he had never seen or been given an agreement to arbitrate, was never told by any manager or HR representative that he was agreeing to arbitrate disputes or waive rights to pursue claims in court, and was never explained the terms of any alleged agreement to arbitrate. In July 2022, via the lower court proceedings, he affirmed that even though he had still not seen such an agreement, he was voiding it to any extent it exists. *Id, ¶5.*

In response, Appellant provided a declaration from its Director of Corporate Human Resources. SER-29-30. She confirmed that Basch was still employed by

Appellant, he completed "required CBU training on October 19, 2019,"[21] and clicked a "Mark Complete" button on a computer to acknowledge he had read, understood, and would comply with the Arbitration Agreement. She also attested that the agreement was countersigned by Appellant's Vice President of Human Resources, Michael Mott. However, the signature page was recycled from the version Appellant had previously used when seeking to compel arbitration for the original four named plaintiffs and does not appear to be a true separate document actually signed by Mott. SER-38, 116.

Appellant did not otherwise contradict Basch's declaration. There is no evidence that Basch was actually given a hardcopy of, or emailed, the arbitration agreement, or otherwise had access to review it when he wanted to. There is no evidence that, in the nearly three years between when he allegedly signed-off on the agreement and he repudiated it, Appellant provided him access to the agreement or otherwise reminded him of the terms of the agreement. The agreement itself (SER-34-38, 112-116) is single-spaced, 2,800 words and over four pages long, and in 10 pt. font. It contains several legal terms (such as "deposition," "interrogatory," and "court of competent jurisdiction"), discovery limitations, references to various statutes and procedural rules, and a lengthy website address that doesn't go anywhere.[22] Some sentences are 5 – 10

---

[21] Which was about seven months after he started working for Appellant.

[22] https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362

lines long. In sum, Appellant expects a 16-year-old to read, understand, apparently memorize, and forever be bound to such an agreement that may have been presented to him when he was clicking-through a fleeting online "training" process over the course of a few minutes years ago.[23]

Basch signed-off on the arbitration agreement when he was a sixteen-year-old minor and he voided it in August 2022, eighteen months after he reached the age of majority. ER-13. Appellant only asked the District Court[24] to rule that the amount of time that had passed was unreasonable. *ECF 77, pp. 8-11*. The District Court rejected Appellant's request.

### D. There is no clear error

As articulated above, a reasonableness standard controls this analysis, and the issue is whether the District Court committed "clear error" in its finding. A "reasonable time" is determined by how much time passes once an individual discovers the nature and significance of the contract, "*not* the time between signing and disaffirming." *Garcia v. Cent. Coast Rests., Inc.*, No. 18-cv-02370-RS, 2019 U.S. Dist. LEXIS 162588, *9 (N.D. Cal. Sept. 23, 2019). The Ninth Circuit has held the following:

> What constitutes a 'reasonable time' depends upon the circumstances of each particular case. *Hastings v.*

---

[23] While Appellant does not fully explain the form it used to validate Basch's sign-off of the arbitration agreement, that document suggests he had completed 103 modules over the course of 2 hours and 54 minutes. SER-32.

[24] Appellant did not request a jury trial on this issue, but instead consented to the District Court resolving the dispute.

> *Dollarhide*, 24 Cal. 195. The reason for this grant of a
> reasonable time was stated in *Goodnow v. Empire Lumber
> Co.*, 31 Minn. 468, 18 N.W. 283, 284, 47 Am.Rep. 798, as
> follows: 'For this purpose of protection the law gives them
> an opportunity, after they have become capable of judging
> for themselves, to determine whether such acts or obligations
> are beneficial or prejudicial to them, and whether they will
> abide by or avoid them.' Under the circumstances of this
> case, Hurley had **no opportunity to exercise any judgment
> upon the matter until the learned** he had some interest in
> the stock. Until then, a reasonable time had not elapsed.

*Hurley v. Southern Cal. Edison Co.*, 183 F.2d 125, 132 (9th Cir. 1950) (emphasis

added). Knowledge of the impact of the contract, or the discovery rule, applies to what

is considered a "reasonable time" to disaffirm a contract. *See e.g., Garcia*, 2019 U.S.

Dist. LEXIS 162588 at *9 (citing *Hurley*); *see also Gust, Rosenfeld & Henderson v.

Prudential Ins. Co. of Am.*, 182 Ariz. 586, 590, (1995) (discovery rule available for

contract disputes). Because the discovery rule applies for a contract dispute, it would

be logical to allow disaffirming a contract based on a similar theory. And this makes

sense, as it would be illogical to expect every person – on their 18th birthday – to start

searching for and consider voiding every contract he/she may have agreed to during

the first 18 years of his/her life. This is why the analysis is fact-intensive and subject

to a "clear error" standard of review. There is "no hard and fast rule" concerning how

long is a "reasonable" time to disaffirm a contract. Relevant factors include the

intelligence of the minor, how he learned of the contract, and what he knew of it.

*Merchants' Credit Bureau v. Akiyama*, 64 Utah 364, 370, 230 P. 1017 (1924)

("[U]nless it is made to appear that the minor was fully advised of his rights after attaining his majority, the law deals leniently with him with respect to the time within which he may disaffirm.")

Appellant's entire argument rests on the sole proposition that 18 months after reaching the age of majority is, per se, too long to void the contract, without considering any of the above-referenced circumstances. That is not the law. It disregards the evidence presented by Basch, especially that he does not have access to the arbitration agreement and does not know any of the details about it.[25] The trial court made a finding of fact that the timing was reasonable in part because Appellant failed to explain to him that he was waiving his right to pursue claims in court and therefore did not have the opportunity to exercise judgment in the matter until he learned of the significance of the ADR.[26] ER-14 (citing *Hurley*, 183 F.2d at 125). This was not clear error based on the circumstances.

---

[25] Appellees are not arguing at this stage that the arbitration agreement was unenforceable as it pertains to Basch based on procedural unconscionability grounds. Whether someone can void an agreement is different than whether the agreement should be unenforceable because of substantive or procedural unconscionability.

[26] As shown by his declaration, Basch was unaware of the potential significance of the ADR until he joined this lawsuit. SER-62.

**E.** **Continued employment was not consideration in exchange for agreeing to arbitration**

Appellant contends that employment, or continued employment, was the consideration given to Basch. But that is not accurate. This is based on several facts: 1) the arbitration agreement itself explicitly states it does <u>not</u> create the benefit of employment;[27] 2) there is no evidence that Basch was informed that he would be terminated if he did not sign-off on the arbitration agreement; 3) Basch was employed for seven months before he clicked the box online in October 2019; 4) even though he voided it in July 2022, his employment continued on (SER-29, ¶2); 5) named plaintiffs Liammaytry and Lenchert never signed the arbitration agreement yet remained employed (*ECF 58, p. 4; ECF 62, p. 7; ECF 76, p.4*); and 6) by Appellant's own admission, there are thousands of servers (representing about 15% of the server workforce, not including minors) who apparently never signed-off on the arbitration agreement (ER-4-5), yet there is no evidence that they were terminated as a result. The District Court also rejected Appellant's argument. ER-14-15.

At most, the consideration provided was that both parties would agree to arbitrate (i.e. the *mutual* obligation to arbitrate). The first line of the first page of the agreement

---

[27] "This Dispute Resolution Agreement is not and shall not be construed to create any contract of employment for a specified duration, express or implied. This Dispute Resolution Agreement does not in any way alter the "at-will" status of employment with Cracker Barrel..." SER-115. The November 2019 agreement contains similar language. SER-86.

50

references the "mutual promises contained" in the agreement, which can only be a reference to Appellant also agreeing to arbitrate claims it may have against the employee. SER-34. Notably, the "Covered Disputes" section states that it "includes claims Cracker Barrel may have against me…." *Id*. Appellant has never initiated any arbitration proceeding against Basch, but it is no longer bound to that restriction.

### F. Appellant's argument is contrary to Arizona law and would eradicate the infancy doctrine

In Arizona, minors who void their contracts and have received a benefit by virtue of that contact, must return[28] the other party to the *status quo* that existed before the parties contracted. *Jennings v. Lee*, 105 Ariz. 167, 171, 461 P.2d 161, 165 (1969). Not all contractual benefits are created the same, and what constitutes the *status quo* is different in each case. Whatever the case, however, "the doors of the court [are] not … closed against" a minor simply because he cannot return the precise consideration paid to him. *Worman Motor Co. v. Hill,* 54 Ariz. 227, 231-32, 94 P.2d 865, 866 (1939). In *Valencia*, for example, the minor was allowed to void a contract, but had to repay the value of the labor and truck tractor engine to the garage because the labor could not be returned, and the engine was damaged by the minor. *Valencia v. White*, 134 Ariz. 139, 144, 654 P.2d 287, 292 (Ariz. Ct. App. 1982).

---

[28] The "benefit" Arizona courts consider is not contractual consideration. Rather, the benefit that must be returned is the actual property or monetary benefit the minor received.

Basch obtained no benefits from the ADR agreement and would not have known about its potential significance until after he joined this lawsuit. Basch voided the ADR Agreement before Appellant disclosed the potential significance to him when it filed its motion to dismiss (*ECF 77*). Voiding it *before* he is aware of the potential significance has to be a "reasonable time." In fact, it would be inequitable and against public policy to *not* be able to void a contract given the "circumstances" as explained above. Regardless, there is nothing preventing Appellant from being returned to the status quo, as it has lost nothing via the voidance. Put simply, if Basch cannot void an agreement from which he received no actual benefit, there are no circumstances where a minor may void their contract. Such an outcome is contrary to Arizona law.

### G.     The cases relied on by Appellant do not apply

Appellant relies on several distinguishable cases that do not apply Arizona law to argue that public policy requires enforcing the arbitration agreement (essentially making it impossible to void the agreement).

*Paster* involved a challenge to a forum selection clause of a liability waiver, which was a prerequisite to going on a student trip, and where the plaintiff had already received the benefit of the contract (going on the trip). *Paster v. Putney Student Travel, Inc.*, CV 99-2062 RSWL, 1999 U.S. Dist. LEXIS 9194, *7 (C.D. Cal. June 7, 1999). In that situation, even though the plaintiff could technically not "return" the trip she had already taken, that decision (attempting to apply California law) was wrong and

contrary to other California cases. For example, other district court decisions in California correctly hold, to the contrary, that under California law, receipt of benefits does not bar disaffirmation. *See, e.g., I.B. ex rel. Fife v Facebook*, 905 F. Supp. 2d 989, 1001 (N.D. Cal. 2012) ("Under California law, a minor may 'disaffirm all obligations under a contract, <u>even for services previously rendered</u>, without restoring consideration or the value of services rendered to the other party.'") (emphasis in original). Regardless, Basch's situation must be evaluated under Arizona law, which at most would involve "returning" Appellant's obligation to arbitrate claims it may have against him.

In *Bobby Floars*, the plaintiff utilized and made payments on a car for several months before he tried to disaffirm the contract. *See Bobby Floars Toyota Inc. v. Smith*, 48 N.C. App. 580, 584, 269 S.E.2d 320, 323 (N.C. 1980) (acknowledging that using the automobile, "an item of personal property" was "constantly depreciating in value"). This is not a situation involving the use of personal property or something that constantly depreciates in value. Basch has not been using, keeping, or doing anything under the arbitration agreement that would have caused any prejudice to Appellant.

In *Sheller*, the employee/plaintiff received an actual benefit of employment in exchange for signing-off on the ADR Agreement. *Sheller by Sheller v. Frank's Nursery & Crafts*, 957 F. Supp. 150, 153-154 (N.D. Ill. 1997) ("Had they not signed the employment application which contained the arbitration clause, they would not have

been hired by Defendant. Thus, if the Court were to allow the minor Plaintiffs to disaffirm the contract, Plaintiffs would be retaining the advantage of employment -- which entitled them to bring the instant Title VII suit -- while repudiating their entire basis of employment -- the employment application."). As explained above, such evidence does not exist here. Also, Basch's situation is not an employment *application* scenario. Furthermore, courts have rejected or otherwise distinguished the reasoning in *Sheller*, noting that it was a fact-specific scenario under Illinois law and not meant to "eviscerate the infancy doctrine." *See, e.g., Stroupes v. Finish Line, Inc.*, No. 1:04-cv-133, 2005 U.S. Dist. LEXIS 6975, *8-12 (E.D. Tenn. Mar. 15, 2005); *Lopez v. Kmart Corp.*, No. 15-cv-01089-JSC, 2015 U.S. Dist. LEXIS 58328, *19-20 (N.D. Cal. May 4, 2015).

Appellant also relies on *E.K.D. ex. Rel Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) in support of its position. *E.K.D. ex Rel Dawes* was, like other cases relied on by Appellant, not an employment case and does not concern Arizona law. Instead, that case involved users of Facebook seeking to disaffirm a forum-selection clause. However, because they continued to use Facebook, the district court prevented such plaintiffs from doing so. But, again, as explained above, there was no consideration provided to Basch that could be returned other than the mutual obligation to arbitrate disputes. This was acknowledged by the District Court here, noting that the cases relied upon by Appellant involved benefits of the "purchase of a

trip, car, and social media account," not an employment and/or arbitration agreement. ER-14, n. 6; ER-15, n.7.

*Norred* concerned a situation involving Texas law, not Arizona law, and still indicated that "reasonable time" depends on the circumstances of the case. *See Norred v. Cotton Patch Café, LLC*, 3:19-cv-1010-G, 2019 U.S. Dist. LEXIS 183290 (N.D. Tex. 2019). *Kelly* involved a situation where a minor purchased stocks between September and December 1929, sold the stocks at a loss in March 1930, and then tried to void the losses a few years later, seven months after he turned 18. *Kelly v. Furlong*, 194 Minn. 465 (Minn. 1935). Whether a "reasonable time" had passed was submitted to the jury to determine, which found that it was not "reasonable." *Id*. at 466. Disregarding the factual dispute in that case and Appellant's waiver of a jury trial to resolve the dispute here, there was no analysis on the *status quo* issue that is relevant here. Notably, even if seven months was a reasonable time, under existing law and policy, the plaintiff in that situation should not have had the ability to void or disaffirm the transactions, as it would have resulted in an unfair monetary gain based on a bad bet in the stock market.

Basch was a minor when he signed-off on the unread ADR agreement, he disaffirmed the agreement before he learned that he even consented to arbitration, and he continued working with Appellant. He never derived any benefit out of the

agreement, and Appellant has not suffered any prejudice or harm. Accordingly, Basch is not subject to arbitration because he appropriately voided the agreement.

### H. Under the "law of the case" doctrine, the District Court's decision must be affirmed

Finally, the "law of the case" doctrine requires affirmation of the District Court's decision. Earlier in the proceedings, the District Court determined that two other plaintiffs (Harrington and Webster) had properly voided the arbitration agreements that they had signed as minors. ER-47, 53. Harrington was 21 years old when he voided his agreement, and Webster was 22 years old. SER-97-98; ER-47. They were both minors when they signed-off on the arbitration agreements via Appellant's automated electronic confirmation process. They both voided the agreements approximately three and four years, respectively, after reaching the age of majority.

"'Under the [law of the case] doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court….'" *United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014) (internal citation omitted). "The law of the case doctrine applies only when the issue was decided explicitly or by necessary implication in the previous disposition." *Underhill v. Kijakazi*, No. 22-36033, 2023 U.S. App. LEXIS 32346, *3 (9th Cir. Dec. 27, 2023). "Even summarily treated issues become law of the case." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995). In accordance with the law of the case, the trial court held:

> At the outset, the Court has already identified two opt-in Plaintiffs that were not subject to arbitration because they entered into Cracker Barrel's Arbitration Agreement as minors. (Doc. 47, at 3 (citing 29-2)). Those opt-in Plaintiffs had voided their Agreements 2-4 years after turning the majority age, which is well over eighteen months (*See* Doc. 29-2). Accordingly, as a matter of consistency and fairness the Court finds Basch's eighteen months delay in voiding his Agreement is reasonable.

ER-13. If it was reasonable for the District Court to determine that time periods of three and four years after reaching the age of majority to void the arbitration agreements, then 18 months must also be reasonable. To hold otherwise would be illogical. The District Court did not commit clear error with respect to its factual findings and, therefore, Basch is not subject to arbitration.

## <u>CONCLUSION</u>

Appellees respectfully request that this Court affirm the District Court's decision in full.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 23-15650 (L), 24-1979

I am the attorney or self-represented party.

**This brief contains 13,624 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[XX] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ *Nitin Sud*    **Date** August 28, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)** 23-15650 (L), 24-1979 _____

The undersigned attorney or self-represented party states the following:

[XX]  I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  /s/ *Nitin Sud* _____ **Date** August 28, 2024 _____

59

## <u>CERTIFICATE OF SERVICE</u>

I, Nitin Sud, certify that I filed the foregoing brief electronically in PDF format with the Court via the ECF system on August 28, 2024.  I further certify that I served the foregoing brief electronically in PDF format through the ECF system on August 28, 2024 to all counsel of record.

 /s/Nitin Sud                          
Nitin Sud
SUD LAW P.C.
State Bar No. 24051399
6750 West Loop South
Suite 920
Bellaire, Texas 77401
Phone: 832-623-6420
Fax: 832-304-2552
Email: nsud@sudemploymentlaw.com